UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES A. CHESLEK

Plaintiff,

Civil Action No. 1:15-cv-00348-JB-WPL

vs.

CHASE BANK,

Defendant.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant Chase Bank USA, N.A. ("Chase") through its counsel, Matthew W. Park of Lewis Roca Rothgerber Christie LLP, and moves pursuant to Fed. R. Civ. P. 56 for summary judgment in Chase's favor and against Plaintiff James A. Cheslek ("Plaintiff") on Plaintiff's remaining claims which he has asserted under: (1) Section 1681s-2(b) of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 to 1681x ("FCRA"); and (2) the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 to -24 ("UPA").

Plaintiff bases his case on his alleged lack of memory that he incurred the charges and lack of memory that Chase became his credit card company after Chase purchased Washington Mutual's assets—including his credit card account. Chase has records that Plaintiff applied for the card, received monthly statements, and made payments <u>directly to Chase</u> on the account. Under the applicable provisions of the FCRA, Chase did not have to delete the credit information it previously furnished on this account because the account was Plaintiff's and the data furnished was accurate and up to date following Chase's reinvestigation responses. In light of these facts, Plaintiff simply cannot meet his burden to raise a genuine issue of material fact that following its reinvestigation Chase affirmed inaccurate information, negligently or otherwise.

Furthermore, his UPA claims are based on Chase's alleged efforts to collect on a debt that was barred by the statute of limitations. The problem for Plaintiff is that Chase sold his debt to a third party in 2010 and so thereafter never engaged in such activity. Furthermore, to the extent Plaintiff pursues a UPA claim for Chase's alleged furnishing of inaccurate credit information: (1) he has insufficient evidence to support such a claim; and (2) the claim is preempted by the FCRA. Consequently, the Court should enter summary judgment on all Plaintiff's claims.

## I. INTRODUCTION

Chase reported a delinquent credit account, in Plaintiff's name, totaling approximately $1,242. *See* Complaint at ¶ 11, filed April 27, 2015 (Doc. 1). Cheslek noticed this debt after checking his credit reports with Transunion, Experian, and Equifax. *See* Proposed Findings and Recommended Disposition at 1, filed January 20, 2016 (Doc. 24) ("PFRD"). Plaintiff disputed the debt with the three credit reporting agencies. *See* Complaint at ¶ 12. Plaintiff also disputed the debt with Chase in December of 2013. *Id.* at ¶ 13. Plaintiff wrote to Chase several times asking for an explanation of the debt. *Id.* at ¶¶ 13, 20, 29, 34, 36. Chase responded to Plaintiff several times, explaining that it had investigated the debt, confirming that the information provided to the credit bureaus was accurate, and explaining that it no longer owned the debt because it had sold it to Midland Credit Management. *Id.* at ¶¶ 14, 18, 21, 24, 30, 37. Plaintiff asserts that Chase's refusal to change how the debt was reported was part of an illegal conspiracy to keep a false account on his credit report. *Id.* at ¶¶ 42, 46, 48.

Plaintiff has asserted three types of claims, specifically: (1) a claim for violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) a claim for violation of the FCRA; and (3) a claim for violation of the UPA. *See id.* at 7-8. The Honorable William P. Lynch has already

proposed dismissal of: (1) Plaintiff's FDCPA claim which relies on various theories under 15 U.S.C. §§ 1692 to 1692p; and (2) the portion of Plaintiff's FCRA claim that relies on Section 1681s-2(a) which provides no private right of action. *See* PFRD at 1. Because the deadline for pursuing objections to the PFRD has passed, Chase has not pursued summary judgment on the claims for which dismissal is proposed in the PFRD. *See United States v. Hernandez-Mejia*, No. 14–0731, 2014 WL 6634412, at *2 (D.N.M. Nov. 20, 2014) (Browning, J.) ("To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" (alteration in original) (quoting *United States v. One Parcel of Real Prop., with Buildings, Appurtenances, Improvements, and Contents*, 73 F.3d 1057, 1059 (10th Cir. 1996))). However, to the extent necessary, Chase re-urges here those prior arguments it raised in its motion for judgment on the pleadings.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

In support of this motion, Chase presents the following undisputed material facts:

1. Plaintiff is a dean at Brown Mackie College in Albuquerque, New Mexico who has previously taught business law and other legal classes. *See* Deposition of James Cheslek at 12:2-18 (Exhibit A to this Motion). He attended law school at Valparaiso University School of Law where he received his law degree in 1974. *See id.* at 7:24-8:2.

2. Plaintiff was in private practice with a law firm for approximately twenty-five years where he became a partner. *See id.* at 9:24-10:14. He was suspended from the practice of law for several years starting in approximately 2001. *See id.* at 14:12-15:9.

3. Plaintiff acknowledged in his deposition that he had several credit cards in the 2007 and 2010 timeframe, including a credit card with Washington Mutual ("WaMu") that he used. *See id.* at 42:11-21, 76:9-13. Plaintiff's WaMu credit card account, which ends in the account numbers 7919, was opened for Plaintiff on March 1, 2007. *See* Affidavit of David Rivera ¶ 4 (Exhibit B to this Motion). Plaintiff's wife was an authorized user of the account who received her own separate credit card; Plaintiff's wife remained an authorized user on the account for the entire time it remained open. *See id.*

4. A sample credit card statement directed to Plaintiff from 2008 and his final WaMu statement from March 2009 are attached as Exhibit C to this Motion. His final statement bearing the WaMu name, dated February 23, 2009, reflects a new balance due of $781.54. *See* Exhibit C at 2. As indicated on the credit card statements, the last four digits of the WaMu account were 7919 which is the same account that Plaintiff contends is at issue in this case. *See* Exhibit C; Cheslek Depo. at 80:6-81:11.[1]

5. On September 25, 2008, the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver for WaMu and transferred substantially all of WaMu's assets to Chase's affiliate, JPMorgan Chase Bank, N.A. *See* Rivera Affidavit ¶ 5; *see also* Federal Deposit Insurance Corporation, Press Release, Failed Bank Information for Washington Mutual Bank.[2] The WaMu credit card assets then were transferred to Chase, including Plaintiff's credit card account and balance due. *See* Rivera Affidavit ¶ 5. The first statement sent to Plaintiff from

[1] The various exhibits to Plaintiff's Complaint also refer to this account ending in 7919 as the account at issue in this matter. *See, e.g.*, Exhibits B and C to the Complaint.

[2] A copy of the press release can be located at the following web address on the FDIC's website: https://www.fdic.gov/bank/individual/failed/wamu.html#press_release

Chase on or about March 22, 2009 reflected the same $781.54 balance as previously reflected on his last WaMu statement. *See* Exhibit D at 1.

6. During April 2009, Chase sent Plaintiff a letter informing him that his credit card obligations had been transferred to Chase. *See* Rivera Affidavit ¶ 6; *see also* Exemplar of Letter Sent to WaMu Credit Card Customers at 1 (Exhibit E to this Motion). Chase sent Plaintiff this letter to his same address where he had previously received his WaMu statements, specifically his 1002 Liberty Trail address in Michigan City, Indiana. *See* Rivera Affidavit ¶ 6; Exhibit B at 1-2. Mr. Cheslek resided at this address from approximately 2005 to the end of 2009. *See* Cheslek Depo. at 19:11-25.

7. Plaintiff claims to have no knowledge of ever having a credit card with Chase and does not recall applying for one. *See* Cheslek Depo. at 45:17-25. However, Plaintiff and his wife's bank account records reflect that they made payments on his WaMu card from 2008 through 2009 including in mid-2009 after Chase had acquired the 7919 WaMu account and began sending out statements for the account. *See* Exhibit F to this Motion. In fact, he and his wife's bank account statements and Chase credit card statements reflect several payments for the same amount on the same date, including: (1) a $25 payment on the card account on February 13, 2009; (2) a payment of $60 on May 18, 2009; (3) a payment of $135 on July 23, 2009. *See* Exhibit D at 1-4; Exhibit F at 1-4; Rivera Affidavit ¶ 7.

8. On or about February 22, 2010, Chase sent a final statement for the credit card account, which reflected a balance of $1,242.81. *See* Exhibit F at 4. Chase then reported this unpaid balance amount to the credit reporting agencies to which it furnishes information. *See* Rivera Affidavit ¶ 8. Then in July 2010, Chase sold the credit card account to Midland Credit

Management. *See id.* Since that transfer to Midland Credit Management, Chase has made no efforts to collect on the debt. *See id.*

9. Plaintiff and his wife began experiencing financial problems in approximately 2011 after they relocated to New Mexico for Plaintiff's new position with Brown Mackie College located in Albuquerque. *See* Cheslek Depo. at 29:9-23. Plaintiff's wife developed gambling problems in 2011. *See id.* Several of Plaintiff's loans went into default during this time period which caused harm to his credit. *See id.* Plaintiff and his wife have separated their finances since 2013. *See id.* at 83:14-18.

10. In 2012 and 2013, Chase received three notifications from the credit reporting agencies that Plaintiff was disputing the credit report regarding his credit card account. *See* Rivera Affidavit ¶ 9. Plaintiff: (1) disputed the account status, payment history profile, and payment rating in his first dispute in March 2012; (2) disputed that the account belonged to another person with the same name in his second March 2012 dispute; and (3) disputed the information as inaccurate in his third dispute in December 2013. *See id.*

11. On each occasion, Chase performed an investigation of its records and then submitted responses to the credit reporting agencies. *See id.* ¶ 10. Chase did not locate any other information indicating that it had inaccurately reported the debt's amount or validity. *See id.* Chase's responses reflected that—to the extent not already indicated in the credit reporting agency's records—the account had charged off as unpaid with a balance due of $1,242.81, that it had been sold to Midland Credit Management, that following the sale no money was due Chase, and that Plaintiff disputed the debt. *See id.* ¶ 10; Reports Submitted to Three Credit Rating Agencies (Exhibit G). Since its investigation confirmed the validity of the original debt

obligation (and its sale to Midland), Chase did not instruct the credit reporting agencies to delete the tradeline for this account. *See* Rivera Affidavit ¶ 10.

12. On December 23, 2013, Chase communicated by way of a letter to Plaintiff that its investigation confirmed the validity of the debt. *See* Exhibit H to this Motion. After Plaintiff raised statute of limitations issues to Midland Credit Management in 2014 regarding the debt obligation, Midland deleted its own credit report regarding the $1,242.81 debt. *See* Complaint at 18, 22 (Exhibits G and H to Complaint).

## III. STANDARD OF REVIEW

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* On a summary judgment motion, "defendants shoulder 'the initial burden to show that there is an absence of evidence to support the nonmoving party's case.'" *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

## IV. ARGUMENT

### A. Plaintiff Has No Viable Claim Under the FCRA.

Because Plaintiff cannot raise a genuine issue of material fact that Chase's reinvestigation failed to identify and correct inaccurate information previously furnished to the credit reporting agencies, he cannot survive summary judgment on his FCRA claim. Additionally, Plaintiff has

no evidence of any wrongdoing—including even negligent wrongdoing—on the part of Chase. Consequently, the Court should enter summary judgment on his FCRA claim.

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The act "places certain duties upon furnishers of credit information." *Vilar v. Equifax Info. Servs., LLC*, No. 14–0226, 2014 WL 7474082, at *12 (D.N.M. Dec. 17, 2014) (Browning, J.). A furnisher of information is "an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies." *Fishback v. HSBC Retail Servs. Inc.*, 944 F. Supp. 2d 1098, 1107 (D.N.M. 2013) (Browning, J.). "Section 1681s–2(b) imposes a duty on furnishers after receiving notice of a consumer dispute from a CRA to investigate and report incomplete and inaccurate information to them." *Vilar*, 2014 WL 7474082, at *12. Under certain statutory provisions making actionable willful or negligent activity, "[a] consumer can bring a private cause of action against the furnisher for violations of § 1681s–2(b)." *Fishback*, 944 F. Supp. 2d at 1107. As this Court has previously explained:

> After a CRA notifies a furnisher of a consumer dispute regarding the completeness or accuracy of information that the furnisher previously provided, the furnisher is obligated to conduct an investigation with respect to the disputed information, review all relevant information the CRA provided, and report the results of the investigation to the CRA. If the investigation reveals that the information is incomplete or inaccurate, the furnisher must report those results to all other CRAs that compile and maintain files on consumers on a nationwide basis to which the furnisher supplied the information. The furnisher must modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable. A consumer can bring a cause of action through FCRA's civil liability sections, 15 U.S.C. §§ 1681n and 1681*o* based upon a furnishers willful or negligent failure to perform these duties after a CRA notifies the furnisher of a consumer dispute.

*Id.* at 1107-08 (citations omitted).

Unfortunately for Plaintiff, he bears the burden of establishing that an FCRA violation occurred which he cannot do here. *See Schueller v. Wells Fargo & Co.*, 559 F. App'x 733, 737 (10th Cir. 2014) (unpublished) (citing supporting authorities) ("Mr. Schueller bears the burden of showing that the information Wells Fargo furnished was inaccurate or incomplete."). Plaintiff admits that he had an account with WaMu with the same account number as that at issue in this case. *See* Undisputed Material Fact 3 and 4. Chase through a transaction facilitated by federal regulators acquired WaMu's assets including Plaintiff's credit card account and obligations. *See* Undisputed Material Fact 5. Chase gave Plaintiff written notice of its acquisition and sent Plaintiff statements, and Plaintiff even began paying Chase on the account. *See* Undisputed Material Facts 6 and 7. The amount listed on Plaintiff's last credit card statement ($1,242.81) is the exact amount reported to the credit rating agencies as the original charged off amount. *See* Undisputed Material Fact 8.

Thus, with these established facts, when contacted about the matter by the credit reporting agencies, Chase did investigate the debt and affirmed and/or updated information to the credit reporting agencies. *See* Undisputed Material Facts 10-11. Chase affirmed that the charged off debt had been $1,242.81, that the debt had been sold to Midland, and that after the sale $0 was then due Chase. *See* Undisputed Material Fact 11. Chase could not report otherwise about the 2012 and 2013 state of the debt because of the sale to Midland. *See* Undisputed Material Fact 11. *See* Undisputed Material Fact 11. None of what Chase reported back to the credit rating agencies in its reinvestigation responses was inaccurate.

Consequently, Plaintiff has no legitimate evidentiary basis for his claims. He bears the burden of proving his claims under the FCRA, including that the information originally furnished was inaccurate and that Chase violated Section 1681s-2(b) of the FCRA by failing to correct this

inaccurate information in its reinvestigation response. *See Schueller*, 559 F. App'x at 737. At most, Plaintiff claims he cannot recall his account. However, Chase's records establish that he had an account with WaMu, that Chase acquired it, and that its post-acquisition experience with Plaintiff's account matches the credit reporting on the account. Because Plaintiff cannot raise a genuine issue of material fact suggesting that he might meet his burden at trial, the Court should enter summary judgment on his FCRA claim.

**B. Plaintiff Has No Claim Under the UPA.**

Plaintiff has no viable UPA claim. Maintaining a UPA claim requires a showing of: (1) a knowingly false or misleading statement; (2) made "in connection with the sale . . . of goods or services"; (3) "by a person in the regular course of the person's trade or commerce"; and (4) "that may, tends to or does deceive or mislead any person." NMSA 1978, § 57-12-2(D). To knowingly make a false or misleading statement under this statute, a person must be "actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100-01, 811 P.2d 1308, 1311-12 (1991).

Plaintiff cannot show that Chase made the alleged misrepresentations he complains of regarding his debt obligation—let alone a knowing misrepresentation. As Chase has articulated in the context of its argument attacking Plaintiff's FCRA claim, it reported accurate information on Plaintiff's debt obligation which it re-confirmed after investigating the issue. Given the documentation supporting Chase's conclusion, it is not plausible that Chase was "actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson*, 112 N.M. at 100-01, 811 P.2d at 1311-12.

Furthermore, Plaintiff's allegations that in violation of the UPA Chase threatened to enforce a debt on which the statute of limitations has run has no factual basis. Chase sold the credit card account to Midland Credit Management in July 2010, roughly a year after Plaintiff last made a payment on what was originally his WaMu account. *See* Undisputed Material Facts 7 and 8. Chase made no further efforts after the sale to Midland to collect on the debt. *See* Undisputed Material Fact 8. New Mexico has a six-year statute of limitations on written contracts. *See* NMSA 1978, § 37-1-3(A). Given these facts and the lengthy statute of limitations, there is no evidence that Chase ever threatened to enforce a debt, much less one for which the statute of limitations had run. Thus, because Plaintiff cannot meet these essential elements of his claim, his UPA claim is subject to summary judgment.

**C. To the Extent Plaintiff Has a Claim Under the UPA Related to Credit Reporting, the FCRA Preempts that Claim.**

Lastly, Plaintiff overlooks that the FCRA expressly preempts his UPA claims which rely upon alleged deficiencies in credit reporting or investigation. As the Seventh Circuit explains, Section 1681t(b) preempts any state law claim related: (a) to furnishing of information to credit rating agencies; or (b) investigating that information given that those activities are regulated under Section 1681s-2:

> Section 1681t(b) provides in pertinent part that "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies. . . ." Because Aleshire's state law tort claims arise out of Harris's reports to consumer credit reporting agencies, they relate to a matter regulated under section 1681s-2. Aleshire argues, however, that section 1681t(b) should be read to preempt only state statutory law claims, not state common law claims such as her three state law tort claims. Of course, the distinction between state statutory law and statutory common law does not appear on the face of section 1681t(b).

*Aleshire v. Harris, N.A.*, 586 F. App'x 668, 671 (7th Cir. 2013) (unpublished). The Seventh

Circuit rejected the debtor's position because adopting that narrow interpretation of the statute would give insufficient weight to the statute's preemptive language. *See id.* For its conclusion, the Seventh Circuit relied on its prior decision in *Purcell v. Bank of Am.*, 659 F.3d 622, 623-26 (7th Cir. 2011), and the Second Circuit's decision in *Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 106-07 (2d Cir. 2009). *See Aleshire*, 586 F. App'x at 670-71.

To the extent the Court must reach the preemption issue, the Court should follow the Second and Seventh Circuit's logic. The Second Circuit persuasively recognizes that for any claim that falls within the purview of activity regulated by Section 1681s-2, Section 1681t(b) broadly preempts any such claim:

> "The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." The same section and introductory language—"[n]o requirement or prohibition may be imposed under the laws of any State"—applies here, and our holding in *Premium Mortgage* forecloses Macpherson's limited reading of the 1996 amendment.

*Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011). As the Court has previously recognized: "When faced with express preemption—where a statute expressly states that it preempts certain areas of state law—a court must determine the scope of the preemption that Congress intended." *Genesee Cnty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*, 825 F. Supp. 2d 1082, 1244-45 (D.N.M. 2011) (Browing, J.). As both the Second and Seventh Circuit persuasively explain, the preemptive language of the statute encompasses any matter regulated by Section 1681s-2. *See* 15 U.S.C. § 1681t(b) ("*No* requirement or prohibition may be imposed under the laws of any State . . . with respect to *any* subject matter regulated under . . . section 1681s-2 of this title, relating to *the responsibilities* of persons who furnish information to consumer reporting agencies. . . ." (emphasis added)). Consequently, summary judgment is also

appropriate on Plaintiff's UPA claim on preemption grounds as to any of his theories relying on credit reporting or investigation in any way.

## V. CONCLUSION

Thus, Plaintiff has no viable claims. He cannot raise a genuine issue of material fact on either his FCRA claims or his UPA claims. Thus, the Court should enter summary judgment in Chase's favor on all of Plaintiff's remaining claims.

Respectfully submitted,

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: *_/s/ Ryan M. Walters_*
Matthew W. Park
Ryan M. Walters
*Attorneys for Defendant Chase Bank.*
201 Third Street NW, Suite 1950 (87102)
P. O. Box 1027
Albuquerque, NM 87103-1027
Telephone: (505) 764-5400
MPark@LRRC.com
RWalters@LRRC.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 29, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmitted to the following:

James A. Cheslek
*Pro Se Plaintiff*
5515 Havasu Ave. NW
Albuquerque, NM 87120
505-559-5213
jcheslek@brownmackie.edu
(Courtesy copy also sent via U.S. Mail)

*/s/ Ryan M. Walters*
Ryan M. Walters