# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAMES A. CHESLEK,

      Plaintiff,

v.                                     CV 15-348 JB/WPL

CHASE BANK,

      Defendant.

## SECOND PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Defendant Chase Bank ("Chase") filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, requesting judgment in its favor for all of Cheslek's remaining claims under Section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and the New Mexico Unfair Practices Act, NMSA 1978 §§ 57-12-1 to -24 ("NMUPA").[1] (Doc. 31.) For the reasons explained below, I recommend that the Court grant Chase's motion for summary judgment and dismiss with prejudice all claims against Chase that arise under § 1681s-2(b) of the FCRA or NMUPA. As this will resolve all claims against Chase, I further recommend that the Court enter full and final judgment in Chase's favor and dismiss this case with prejudice.

---

[1] On May 19, 2016, Judge Browning adopted my Proposed Findings and Recommended Disposition as to Chase's motion for judgment on the pleadings. (Doc. 39.) Judge Browning dismissed with prejudice all claims against Chase that arose under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and Section 1681s-2(a) of the FCRA. (*Id.*)

## BACKGROUND

The following facts are undisputed.[2] Cheslek opened a credit card account on March 1, 2007, with Washington Mutual ("WaMu"). (Doc. 32-1 at 24 (Cheslek Aff.).) The WaMu credit card account ended in 7919 and is the same account at issue in this case. (Doc. 31-1 at 14-15 (Cheslek Dep. 80:6-81:11).) Chase acquired Cheslek's WaMu account, including any balance owed, sometime in late 2008 or early 2009. (Doc. 32-1 at 26.)

Cheslek continued making payments on the credit card account through July 23, 2009. (Doc. 31-4 at 1-4; Doc. 31-6 at 1-4.) Chase sent a final statement of account for the credit card on February 22, 2010, reflecting a balance $1,242.81. (Doc. 31-4 at 5.) Chase reported the unpaid balance to several credit reporting agencies ("CRAs"). (Doc. 31-2 at 2 (David Rivera Aff.).) Chase sold the credit card account to Midland Credit Management ("MCM") in July 2010. (*Id.* at 2-3.) Chase did not attempt to collect on the account after selling it to MCM. (*Id.* at 3.)

Cheslek disputed the debt with several CRAs twice in March 2012 and again in December 2013. Each time, the CRA contacted Chase and Chase investigated the claim. (Doc. 31-2 at 3; Doc. 31-7.) Chase reported back to the CRAs that the information it had provided was valid, but clarified that no money was due Chase because it sold the account to MCM. (Doc. 31-2 at 3; Doc. 31-7.)

In December 2013, Cheslek noticed on his credit reports from Transunion, Experian, and Equifax, that Chase was reporting a delinquent debt of $1,242. Cheslek disputed the alleged debt with the three CRAs and directly with Chase. On December 9, 2013, Cheslek requested that

---

[2] Counsel for Chase included in its statement of undisputed facts information about Cheslek's suspension from the practice of law. The information was negative, irrelevant to the case, and could only have been included to prejudice the Court against Cheslek or to embarrass Cheslek. In the future, I suggest that counsel refrain from such personal antics and stick to the merits of the case.

Chase verify the alleged debt and forward him copies of the original credit card agreement and all receipts to verify the amount owed. Approximately ten days later, Chase responded that it had sold the account to MCM and did not provide Cheslek with copies of the credit agreement because the account was opened over the internet or the phone and did not provide copies of any receipts. Chase continued reporting the alleged debt to the three CRAs. Chase advised Cheslek to contact MCM about the alleged debt. On February 24, 2014, Chase informed Cheslek that it had investigated and verified the alleged debt.

Cheslek contacted MCM on March 11, 2014, and requested verification of the alleged debt. MCM informed Cheslek that it agreed with him that the account could not be verified and that it had instructed the three CRAs to delete the account from Cheslek's credit file.

On April 7, 2014, Cheslek forwarded the correspondence with MCM to Chase and demanded that Chase remove the negative references from his credit report. Chase responded simply that it had provided accurate information to the three CRAs. Chase did not provide Cheslek with a copy of its investigation or other verification documents.

Cheslek made additional demands that Chase delete the report to the CRAs on July 31, 2014, and January 31, 2015. Chase responded on February 26, 2015, that it could not provide Cheslek with the relevant information because the account had been sold to MCM.

Cheslek contends that he has never applied for, held, charged against, or made payments on a Chase credit card. (Doc. 32-1 at 25-26.) Chase continues to report the alleged delinquent account, with a zero balance due to Chase, to the three CRAs.

### STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

3

56(a). The moving party bears the initial burden of "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmovant must identify these facts by reference to "affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* A mere "scintilla" of evidence is insufficient to successfully oppose a motion for summary judgment. *Id.* at 252. The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

In a case such as this, where the burden of persuasion at trial would be on the nonmovant, the movant can meet Rule 56's burden of production by either (1) providing affirmative evidence negating an essential element of the nonmovant's claim or (2) showing the Court that the nonmovant's evidence is insufficient to demonstrate an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 331 (citations omitted). Evidence provided by either the movant or the nonmovant need not be submitted "in a form that would be admissible at trial." *Id.* at 324. Rather, the content of the evidence presented must be capable of being presented in an admissible form at trial. *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006). For example, parties may submit affidavits to support or oppose a motion for summary judgment, even though

the affidavits constitute hearsay, provided that the information can be presented in another, admissible form at trial, such as live testimony. *See* FED. R. CIV. P. 56(c)(4); *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010); *Trevizo*, 455 F.3d at 1160.

A bona fide factual dispute exists even when a pro se plaintiff's factual allegations that are in conflict with the defendant's affidavits are less specific or well-documented than the contentions of the defendant. *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). Conclusory and self-serving allegations without facts that would be admissible in evidence do not create a material factual dispute that would preclude summary judgment. *Id.* at 1111; *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1321 (10th Cir. 2010) (quoting *L&M Enter., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)) ("Unsupported conclusory allegations . . . do not create a genuine issue of fact."); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) (citations and internal quotation marks omitted) ("We have long held that conclusory allegations without specific supporting facts have no probative value.").

Because Cheslek is a pro se litigant, I must construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall*, 935 F.2d at 1110). Liberal construction requires courts to make some allowance for a pro se litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

DISCUSSION

Chase moves for summary judgment in its favor on all claims arising under § 1681s-2(b) of the FCRA and NMUPA. The parties stipulated that any NMUPA claim related to credit reporting is preempted by the FCRA. (Doc. 32 at 22.) In his response to the motion for summary judgment, Cheslek makes much of the duties imposed on a furnisher when the furnisher receives a dispute directly from a consumer. (*Id.* at 15-18 (citing 15 U.S.C. § 1681s-2(a)).)

Section 1681s-2(b) "imposes a duty on furnishers [of information] after receiving notice of a consumer dispute from a CRA to investigate and report incomplete and inaccurate information to [the CRA]." *Vilar v. Equifax Info. Servs., LLC*, No. CIV 14-0226 JB/KBM, 2014 WL 7474082, at *12 (D.N.M. Dec. 17, 2014) (unreported) (citing *DiMezza v. First USA Bank*, 103 F. Supp. 2d 1296, 1299 (D.N.M. 2000)). A furnisher of information is "an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies." *Fishback v. HSBC Retail Servs. Inc.*, 944 F. Supp. 2d 1098, 1107 (D.N.M. 2013) (quoting *Jarrett v. Bank of Am.*, 421 F. Supp. 2d 1350, 1352 n.1 (D. Kan. 2006)).

After a CRA notifies a furnisher of information that a consumer disputes the completeness or accuracy of information previously provided by the furnisher, § 1681s-2(b)(1) requires the furnisher to conduct an investigation with respect to the disputed information, review all relevant information provided by the CRA, and report the results of the investigation to the CRA. 15 U.S.C. § 1681s-2(b)(1)(A)-(C). If the furnisher discovers, through its investigation, that the information provided was incomplete or inaccurate, the furnisher must report those results to all other CRAs to which the furnisher supplied the information, provided that the other CRAs compile and maintain files on consumers on a nationwide basis. 15 U.S.C. § 1681s-2(b)(1)(D). The furnisher must modify, delete, or permanently block the report of the

6

disputed information if that information is determined to be inaccurate, incomplete, or unverifiable. 15 U.S.C. § 1681s-2(b)(1)(E).

"When the furnisher receives notice of a dispute from the [CRA], it must perform the verification and correction duties described in [§] 1681s-2(b)." *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012). The verification and correction duties do not arise until after a CRA notifies a furnisher of a dispute: notice directly from a consumer does not give rise to these duties. *See Pinson v. Equifax Credit Info. Servs.*, 316 F. App'x 744, 751 (10th Cir. 2009) (unpublished); *Vilar*, 2014 WL 7474082, at *13.

A consumer may bring a private cause of action for violations of § 1681s-2(b). *See DiMezza*, 103 F. Supp. 2d at 1299. A consumer may bring a cause of action through §§ 1681n and 1681o based on a furnisher's "willful or negligent failure to perform [its] duties after a CRA notifies the furnisher of a consumer dispute." *Vilar*, 2014 WL 7474082, at *13. The plaintiff bears the burden of showing that the information provided by the furnisher was inaccurate or incomplete. *Schueller v. Wells Fargo & Co.*, 559 F. App'x 733, 737 (10th Cir. 2014) (unpublished).

The parties agree, and I concur, that Chase acted as a furnisher of information in this case. The parties further agree that Cheslek properly disputed the account with a CRA, which in turn notified Chase and triggered Chase's duty to investigate under § 1681s-2(b).

Cheslek states that Chase did not produce any document in discovery labeled "investigation." (Doc. 32 at 17.) As an initial matter, the FCRA does not require a furnisher to caption a document "investigation." Rather, the FCRA requires a furnisher to conduct an investigation upon notification from a CRA that a consumer is disputing information. Chase presented uncontroverted evidence that it conducted an investigation of the information related to

this credit card account on three separate occasions: twice in March 2012 and again in December 2013. (Doc. 31-2 at 3 (Rivera Aff.) ("On each occasion, Chase performed an investigation of its records and then submitted responses to the credit reporting agencies. Chase did not locate any other information indicating that it had inaccurately reported the debt's amount or validity. Chase's responses reflected that—to the extent not already indicated in the credit reporting agency's records—the account had charged off as unpaid with a balance due of $1,242.81, that it had been sold to Midland Credit Management, that following the sale no money was due Chase, and that Plaintiff disputed the debt. Since its investigation confirmed the validity of the original debt obligation (and its sale to Midland), Chase did not instruct the credit reporting agencies to delete the tradeline for this account."); Doc. 31-7 (reports provided to CRAs).)

Cheslek presented no evidence and made no argument—beyond his self-serving and unsubstantiated allegation that Chase did not conduct an investigation—that Chase violated § 1681s-2(b). Cheslek protests that Chase's responses to his inquiries were unsatisfactory. Even if that is true, § 1681s-2(b) requires a furnisher of information to communicate with and report back to the CRA, not the consumer. Chase did this. Chase presented evidence, in the form of an affidavit and reports provided to the CRAs, that it did conduct an investigation each time Cheslek disputed the debt with the CRAs and even updated its reporting to reflect that Chase was no longer owed any money. (Doc. 31-2 at 3; Doc. 31-7.)

Therefore, I recommend that the Court find that Cheslek has not presented evidence creating a material dispute of fact with regard to his § 1681s-2(b) claim and further conclude that Chase is entitled to summary judgment in its favor on this claim.

As for any remaining claim under the NMUPA, Cheslek bears the burden of showing that Chase made a knowingly false or misleading statement, "in connection with the sale . . . of goods

or services," "in the regular course of [Chase's] trade or commerce," "that may, tends to or does deceive or mislead any person." NMSA 1978 § 57-12-2(D). To prove that Chase made a knowingly false or misleading statement, Cheslek would have to prove that Chase was "actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311-12 (N.M. 1991).

Here, Cheslek admits that he had the WaMu credit card account and admits that the account was subsequently transferred to or purchased by Chase. (Doc. 32 at 5, 11.) Cheslek does not contend that he paid off the WaMu credit card or that he did not owe a debt to WaMu. Accordingly, Cheslek cannot show that Chase made a false or misleading statement to the CRAs when reporting the delinquent account, much less that Chase knowingly made such a statement. This is fatal to Cheslek's NMUPA claim. Therefore, I recommend that the Court grant Chase's motion for summary judgment in its favor on the NMUPA claim.

### CONCLUSION

The parties agree that Cheslek's claim related to credit reporting under the NMUPA is preempted by the FCRA and should be dismissed with prejudice. I recommend that the Court find that Chase complied with its obligation under, and therefore did not violate, § 1681s-2(b). Additionally, I recommend that the Court find that Cheslek cannot show that Chase made a false or misleading statement to the CRAs. Therefore, I recommend that the Court grant Chase's motion for summary judgment and enter judgment in Chase's favor on Cheslek's remaining claims under § 1681s-2(b) of the FCRA and the NMUPA. Because an Order granting Chase's motion for summary judgment will resolve all remaining claims, I further recommend that the Court dismiss this case with prejudice.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_William P. Lynch_
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.